JULIA G. SMITH, Appellant, v. HIRAM W. BABCOCK, Respondent.

*Contracts — to perform the duties of another as chairman of a county committee — burden of proof that it is against public policy — nonsuit.*

Upon an appeal from a judgment of nonsuit the plaintiff is entitled to have the case considered in the light most favorable to him, and to have the benefit of every fact proved and of every inference which is fairly deducible from the facts,

In an action brought by the assignee of one Fred M. Smith to recover for work, labor and services performed by him, it appeared that in the month of August, 1892, the defendant informed Smith that he was about to be chosen chairman of a county Democratic committee; that he was anxious to accept the position, but had not time to perform its duties; that he wished Smith to perform them and promised to pay Smith for such performance. The defendant was appointed chairman and Smith performed his duties, opened party headquarters, remained there to receive persons and answer questions, provided for meetings and speakers, received the speakers and took care of them, and also provided transportation for the speakers and accompanied them to various places in the county.

Upon the trial the plaintiff was nonsuited,

*Held,* that the contract was not necessarily against public policy, nor did it violate subdivision 4 of section 41o of the Penal Code, prohibiting the contribution of money for any other purpose than the printing and circulation of handbills, books and other papers previous to an election or town meeting or the conveying of electors to the polls, or for music or rent of halls;

That the contract was personal in its character for the performance by the plaintiff's assignor of the work of the defendant, in such manner that the defendant would receive the credit for it;

That, if the contract was designed for some forbidden purpose and to defeat or evade the statute, it would undoubtedly be void, but that the burden was upon the defendant to show this;

That as the contract appeared the nonsuit was improper.

APPEAL by the plaintiff, Julia G. Smith, from a judgment of the County Court of Cayuga county in favor of the defendant, entered in the office of the clerk of the county of Cayuga on the

20th day of July, 1895, affirming a judgment of nonsuit granted by the City Court of the city of Auburn.

The plaintiff is the assignee of one Fred M. Smith, and brings this action to recover for work, labor and services performed by her assignor in the fall of 1892 at the request of the defendant and at the agreed price, as it is alleged, of $500. The record discloses the following facts: In the month of August, 1892, the defendant, Hiram W. Babcock, informed the plaintiff's assignor that he was about to be chosen chairman of the Democratic county committee of the county of Cayuga; that he was anxious, for personal reasons, to accept the position, if chosen, but that his own private business was such that he could not very well neglect it and give to the performance of his duties as chairman the time and attention which they would demand; that he (Smith) had had experience and was familiar with such duties, and that, therefore, he wanted him to represent him, the defendant, upon such committee. Smith, in reply to this request, stated that he could not afford to spend his time gratuitously as his time was his only capital in business. The defendant replied that he did not expect him to perform the services for nothing, and that there would be ample means with which to pay for the same. Smith stated that he was unwilling to enter into any contract with the county committee, whereupon the defendant asked Smith if he considered him responsible, to which Smith replied that he did for any agreement or bargain which he might make, and then added that if he performed the services desired by the defendant he should do so for him personally, to which the defendant replied, "All right, I will pay." The defendant then asked what he thought the services would be worth, and Smith told him $500. The defendant said they would be worth it. Thereafter the defendant was appointed chairman of the county committee and Smith entered upon the discharge of his duties. But prior to such appointment, at the suggestion of the defendant, he (Smith) opened party headquarters and gave such time and attention to the performance of the duties required of him as seemed to be necessary. After the campaign was formally opened he was also chosen secretary of the executive committee, but no claim is made for the services rendered by him in that capacity. It appears that the duties devolving upon Smith as the representative of the defendant, were to be at headquar-

ters to receive parties that came in, and attend them in person, and answer such questions as came from different parties interested in the campaign; to provide for meetings that were to be held in Cayuga county; to secure speakers for different dates; to receive campaign speakers when they arrived at Auburn, and take care of them; to arrange dates and secure places where meetings were to be held, and to provide transportation for and accompany the various speakers during their campaign. About three days before the close of the campaign the defendant came to Smith, and told him that certain men, mentioning them by name, had come from New York with money, and that he was to go and get his pay, to which Smith replied that he had nothing to do with them; that he, defendant, understood very well that he was working for him, and had nothing to do with asking them for payment for his services. Subsequently, and two or three days after the election, the defendant met Smith at a hotel in the city of Auburn, and asked him if he had received his pay; to which he replied that he had not, and that he, the defendant, knew he had not. Smith then told him that he wanted his pay. The defendant wanted to know what he was going to charge. Smith thereupon referred to the talk of August, in which it was understood that the services would be worth $500, but said that he would make a lump bill against him for $300 for all services. The defendant said, "Make out your bill and send it to me," which Smith did upon the 11th of November, 1892, but never received any reply to this bill except a promise to settle.

  *John Van Sickle,* for the appellant.

  *D. L. Hurlburt,* for the respondent.

ADAMS, J.:

  The claim which the plaintiff seeks to establish through the medium of this action, and which in her bill of particulars she states is for work, labor and services "performed and rendered (by her husband) in conducting the Democratic campaign in the county of Cayuga, between the said dates in 1892 (September 1st to November 11th), and performing the duties of said Hiram W. Babcock as chairman of said county committee," is resisted by the defendant upon the ground that the contract upon which it is founded is in

contravention of the statute which prohibits contributions of money with the intent to promote the election of a person to an elective office, and upon the further ground that such contract is, in its spirit and letter, repugnant to public policy.

It is always the duty of the court, and more especially is this so in these latter days, to set its face sternly and rigidly against infraction of any and every law which is designed to promote the purity of elections and to prevent the corruption of electors, but it is equally its duty to apply the law impartially to all suitors who may be attempting to assert or defend their legal rights whatever may be the circumstances of the particular controversy which it is called upon to adjudicate. In the case in hand it is true that the differences sought to be adjusted are traceable to an agreement which, as the evidence now stands, it appears was entered into by the parties for the rendition of services connected with the general election of 1892, and if it can be said as matter of law that the contract was entered into with the sole design to promote the election of one or more persons, or if it was a mere device or cover by which such election was to be accomplished, the defendant's contention is undoubtedly well grounded, and the plaintiff must fail in her action. This contention, as we understand it, is that the contract entered into between these parties was violative of subdivision 4 of section 41o of the Penal Code of this State. This section, as its caption clearly indicates, was designed by the Legislature to prevent "furnishing money or entertainment to induce attendance at polls," and it provides that "Any person who, with the intent to promote the election of a person to an elective office: 1.  *  *  * 2.  *  *  *  3.  *  *  *  4. Contributes money for any other purposes than the printing and circulating of hand bills, books and other papers previous to an election or town meeting, or conveying electors to the polls, or music or rent of halls, is guilty of a misdemeanor." It is easily conceivable that a contract might be entered into substantially like the one which the plaintiff insists was made between her assignor and the defendant which would seek to accomplish by indirection precisely what this statute is designed to prevent — that is, a man might be selected and employed to perform certain clerical duties, not because of any necessity for his employment, nor because of any peculiar aptitude which he possessed for the duties

his position required him to perform, but rather because of the influence he was supposed to have with a certain class of voters. It is broadly intimated that such a purpose really lies at the foundation of the agreement in question, and it is quite possible that, with all the facts before them, a jury would be justified in reaching a conclusion in harmony with this intimation, and in that event the plaintiff would certainly fail in her action; but from the facts as they now stand, the question to be determined is whether or not the court was justified in adopting such a conclusion as a matter of law. This being an appeal from a judgment of nonsuit, the plaintiff is entitled to have the case considered in the light most favorable to her contention and likewise to have the benefit of every fact proven and every inference which is fairly deducible therefrom. (*Stuber v. McEntee*, 142 N. Y. 200, 205; *McNally* v. *Phœnix Ins. Co.*, 137 id. 389; *American Central Ins. Co.* v. *Hagerty*, 92 Hun, 28.) And with this rule in mind we are not prepared to hold that it is impossible to draw inferences from the established facts in the case which are consistent with a valid agreement. It seems that the defendant was ambitious to serve his party as chairman of its county committee, and that he discovered an opportunity in the immediate future by which he believed his ambition might be gratified, but being unwilling to divert from his private business the time which would be required to manage the affairs of his party, he entered into negotiations with the plaintiff's assignor to represent him upon the committee and to perform the labors which would naturally fall upon his shoulders as chairman. During these negotiations he was careful to impress upon Smith the fact that it was his, defendant's, work which was to be done, and that it was to be performed in such a manner that the defendant was to receive whatever credit resulted from its performance. These negotiations ultimately resolved themselves into a contract by which the defendant assumed personal responsibility for the services to be performed. This being the situation, it is quite obvious that a contract was established between these parties which was personal in its character, and the fact that one of the objects sought to be accomplished in its fulfillment was the success of the nominees of one of the two great political parties does not, in our opinion, deprive it of that character. It might as well be said that a contract of employment between the

publishers of a partisan newspaper and its editor, whose only duty was to accomplish by his pen what the plaintiff's assignor was expected to accomplish by his diligence and energy, would be within the condemnation of the statute. In either case if the element of intent is present, that is, if the contract is entered into for some ulterior purpose, and with the design to defeat or evade the statute in its true intent and meaning, then doubtless it is void; but until that is made to appear, and in this case the *onus* is upon the defendant to make it so appear, we think it must be treated like any other contract. These views lead us, therefore, to the conclusion that the question of the intent of the parties in entering into the agreement in question should have been submitted to the jury, and that the failure to do so was error which renders a reversal of the judgment appealed from necessary.

All concurred.

Judgments of the County Court and the City Court of Auburn reversed, with costs.